Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| VYRNA LEE PRADO APONTE<br><br>**PETICIONARIO**<br><br>V.<br><br>SUCN. JOSÉ RAMÓN PRADO POLO Y ANA APONTE ORTEGA, MARGUERITE PRADO COLÓN, NANCY PRADO COLÓN, PEGGIE PRADO APONTE, JOHANNA PRADO APONTE<br><br>**RECURRIDA** | TA2026CE00598 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Civil Núm. CA2023CV01975<br><br>Sobre:<br><br>División o Liquidación de la Comunidad de Bienes Hereditarios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 8 de junio de 2026.

El 12 de mayo de 2026, la Sra. Vyrna Lee Prado Aponte (señora Prado Aponte o la peticionaria) compareció ante nos mediante *Petición de Certiorari* y solicitó la revisión de una *Resolución* que se emitió el 19 de marzo de 2026 y se notificó el 20 de marzo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción para Excluir Prueba sobre Créditos No Alegados* […] que presentó la Sra. Peggie Prado Aponte (señora Peggie), y la Sra. Johanna Prado Aponte (señora Johanna). Determinó que la previa denegatoria a la solicitud de enmendar la Demanda para incluir reclamaciones por pagos de hipoteca, mantenimiento y gastos legales constituía ley del caso, por lo que procedía excluir toda prueba relacionadas con dichas reclamaciones.

Por los fundamentos que expondremos a continuación, *expedimos* la *Petición de Certiorari* y **revocamos** el dictamen recurrido.

I.

El 20 de junio de 2023, la peticionaria presentó una *Demanda* sobre liquidación de comunidad de bienes hereditarios contra la Sra. Marguerite Prado Colón (señora Marguerite), la Sra. Nancy Prado Colón (señora Nancy), la señora Peggie, y la señora Johanna (en conjunto, las recurridas).[1] En esta, alegó que todas las partes componían la Sucesión del Sr. José Ramón Prado Polo (señor Prado Polo) y la Sra. Ana Aponte Ortega, por ser hijas de los causantes. Sin embargo, aclaró que, la señora Marguerite y la señora Nancy eran hermanas de ella de vínculo sencillo por lo que les correspondía una participación en la herencia del padre.

Por otro lado, expresó que, al momento de sus respectivos fallecimientos, el señor Prado Polo y la Sra. Ana Aponte Ortega no habían otorgado testamento. Sostuvo que habían transcurrido tres años desde la muerte del señor Prado Polo y que, pese a múltiples gestiones para lograr una liquidación extrajudicial de la herencia, estas no habían tenido éxito. Por ello, indicó que no desea permanecer en la comunidad hereditaria y solicitó la intervención del Tribunal para liquidar el caudal hereditario.

Alegó que, el único bien que componía el caudal hereditario era una residencia ubicada en la calle 16 S-22 de la urbanización Jardines de Country Club, en Carolina, Puerto Rico. Ante ello, solicitó que el Tribunal liquidara la comunidad hereditaria constituida por la sucesión del señor Prado Polo y la Sra. Ana Aponte Ortega conforme a la tasación y al cuaderno particional que acompañaba la Demanda. Cabe precisar que, la peticionaria

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

enmendó la *Demanda* en tres (3) ocasiones, a saber, el 27 de junio de 2023, el 13 de octubre de 2023, y el 18 de octubre de 2023.[2]

Posteriormente, el 4 de diciembre de 2023, la señora Peggie presentó su alegación responsiva.[3] En síntesis, aceptó ciertas alegaciones contenidas en la *Demanda* y, en cuanto a las restantes, indicó que carecía de información suficiente para aceptarlas o negarlas, además de señalar que desconocía si existían bienes adicionales. Como defensas afirmativas, alegó que todos o parte de los bienes eran de carácter privativo y, por consiguiente, no estaban sujetos a división. Asimismo, sostuvo que tenía una reclamación de créditos contra la peticionaria que no habían sido satisfechos. **Sin embargo, de igual forma, alegó expresamente que la peticionaria tenía derecho a reclamar créditos contra la parte recurrida** o que dichos créditos habían sido satisfechos. Finalmente, se reservó el derecho de enmendar, modificar, eliminar o añadir defensas afirmativas, así como de enmendar sus contestaciones, presentar demanda contra coparte o contra tercero, conforme al descubrimiento de prueba que se realizara en el caso.

Así las cosas, el 5 de diciembre de 2023, el TPI emitió y notificó una *Orden* mediante la cual le concedió a las partes un término de sesenta (60) días para presentar un escrito inicial con la siguiente información: (1) el inventario y avalúo de todos los bienes que componían el caudal de la extinta sociedad legal de gananciales o comunidad de bienes o caudal hereditario; (2) la descripción de las deudas y el balance del referido caudal o masa; (3) la identificación de todo crédito reclamado, así como la evidencia que sustentara su procedencia; y, por último, (4) la Planilla de Caudal Relicto, Relevo de Hacienda, y Declaratoria de Herederos.[4]

---

[2] *Véase*, Entradas Núm. 4, 16, y 20, SUMAC TPI. Cabe precisar que, en estas tres ocasiones, la Demanda se enmendó con el fin de añadir las direcciones de la señora Marguerite, la señora Johanna y la señora Peggie.
[3] *Véase*, Entrada Núm. 34, SUMAC TPI.
[4] *Véase*, Entrada Núm. 35, SUMAC TPI.

En cumplimiento con esta *Orden*, el 15 de mayo de 2024, la señora Prado Aponte presentó una *Moción en Cumplimiento de Orden e Informativa.*[5] En esta, presentó la Planilla de Caudal Relicto de la causante, la Sra. Ana Aponte Ortega. Además, informó que no había sido posible celebrar la reunión entre las abogadas ordenada por el TPI, pese a las gestiones realizadas para coordinarla. **Por otro lado, indicó que había estado sufragando los pagos de la hipoteca y el mantenimiento del patio de la propiedad inmueble, los cuales le interesaba reclamar como créditos.** Finalmente, reiteró que la sucesión contaba con una sola propiedad y expresó que, de las partes estar disponibles, existía la posibilidad de alcanzar un acuerdo.

El 20 de junio de 2024, se celebró la conferencia inicial. De la *Minuta Resolución* de esta vista surge que durante la vista, **la representación legal de la peticionaria informó que esta última había estado realizando los pagos de la hipoteca de la propiedad, por lo que reclamaba créditos a su favor.[6] Indicó que se presentó un cuaderno particional en el que surgía que dichos pagos habían mantenido la hipoteca al día, así como una tasación de la propiedad que fue unida a la *Demanda*.** Además, notificó que la peticionaria interesaba adquirir la participación correspondiente a sus hermanas en el inmueble.

A raíz de lo anterior, el TPI concedió a las partes hasta el 30 de octubre de 2024 para completar el descubrimiento de prueba, apercibiendo que cualquier gestión no realizada dentro de dicho término se entenderá renunciada. Asimismo, señaló la Conferencia con Antelación a Juicio para el 9 de diciembre de 2024 mediante videoconferencia. Por último, ordenó que el Informe de Conferencia con Antelación a Juicio incluyera estipulaciones sobre los

---

[5] *Véase*, Entrada Núm. 52, SUMAC TPI.
[6] *Véase*, Entrada Núm. 55, SUMAC TPI.

causantes, sus herederos, la participación porcentual de cada uno y los bienes objeto del litigio, y dispuso que la peticionaria identificara adecuadamente las facturas que presentaría como evidencia.

El 31 de octubre de 2024, la peticionaria presentó una *Moción Informativa y en Cumplimiento de Orden.*[7] En esta, reconoció que, el Tribunal ordenó que el descubrimiento de prueba se realizara hasta el 30 de octubre de 2024. Sin embargo, expuso que, debido a problemas de electricidad que afectaron la tecnología de la oficina de su representación legal, no se pudieron enviar los documentos antes de las 12:00 p.m.; no obstante, indicó que a las 8:06 a.m. del día siguiente se enviaron las contestaciones a los interrogatorios, señalando que ello no causó perjuicio a las partes ni impidió la continuación del caso. Además, notificó que le cursó una solicitud de producción de documentos y requerimiento de admisiones a las partes demandadas no en rebeldía, tan pronto tuvo acceso a sus documentos. Finalmente, indicó que solicitó al tasador José Net un estimado de honorarios para la tasación de la propiedad inmueble, con el propósito de someterlo al Tribunal, y anejó la información del tasador para su evaluación.

Por otra parte, el 5 de diciembre de 2024, la peticionaria presentó una *Mocion Informativa y Solicitando Conversión de Vista.*[8] Informó que, realizó gestiones extrajudiciales para obtener respuestas al descubrimiento de prueba pendiente, pero que las recurridas no acusaron recibo ni contestaron las comunicaciones cursadas. Además, indicó que previamente les había remitido una tasación de la propiedad, el balance de cancelación de la hipoteca, recibos y una **relación de créditos reclamados[9]**, documentos que

---

[7] *Véase*, Entrada Núm. 57, SUMAC TPI.
[8] *Véase*, Entrada Núm. 60, SUMAC TPI.
[9] *Véase*, Anejo 4 de la moción.

fueron anejados a la moción, así como las contestaciones a interrogatorios. También informó que presentó una oferta de sentencia al amparo de la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. V, R.35.1.

En vista de lo antes expuesto, solicitó que la Conferencia con Antelación a Juicio se convirtiera en una vista sobre el estado de los procedimientos y transaccional, que se ordenara a las recurridas no rebeldes contestar el descubrimiento de prueba pendiente y expresó desconocer la posición de estas respecto a una liquidación justa de la herencia debido a la falta de comunicación y a lo escueto de sus alegaciones.

En respuesta, el 6 de diciembre de 2024, el TPI emitió y notificó una *Orden* mediante la cual expresó que los asuntos planteados en la referida moción se atenderían en la vista pautada.[10] Así las cosas, el 19 de diciembre de 2024, se celebró la Conferencia con Antelación al Juicio. De la *Minuta* de esta vista surge que el Tribunal informó que no discutiría las mociones pendientes por haber sido atendidas previamente y que notificaría oportunamente su determinación.[11] No obstante, atendió el incumplimiento con la presentación del Informe de Conferencia con Antelación al Juicio.

A esos efectos, concedió a las partes hasta el 13 de enero de 2025 para presentar el informe, el cual deberá incluir los testigos que utilizará cada parte, un inventario de los bienes existentes y **la identificación y detalle de los créditos incluidos en el cuaderno particional.** Asimismo, ordenó a los abogados reunirse el 17 de diciembre de 2024 mediante videoconferencia para preparar dicho informe. Finalmente, dispuso que, una vez recibido el Informe de Conferencia con Antelación al Juicio, señalaría una vista para

---

[10] *Véase*, Entrada Núm. 61, SUMAC TPI.
[11] *Véase*, Entrada Núm. 67, SUMAC TPI.

discutirlo, y ordenó que cualquier planteamiento adicional fuese presentado mediante moción y no incluido en el informe.

Posteriormente, el 22 de mayo de 2025, la señora Prado Aponte presentó una *Moción sobre Enmienda a Demanda*.[12] En esta, solicitó el reconocimiento de créditos a su favor contra las Sucesiones involucradas en el caso. Alegó, en primer lugar, que desde septiembre de 2020 había venido realizando el pago de la hipoteca de la propiedad, por lo que reclamó el reembolso de dicha partida, la cual, a su entender, ascendía al menos a $21,786 hasta noviembre de 2024, cantidad que, según alegó, continuaba acumulándose con el paso del tiempo. Asimismo, reclamó el reembolso de los gastos de mantenimiento incurridos desde el fallecimiento de sus padres, los cuales, presuntamente totalizaban aproximadamente $1,770 hasta septiembre de 2024, incluyendo poda de patio, trabajos de electricidad y plomería necesarios para la conservación del inmueble. Finalmente, solicitó el reembolso de gastos legales relacionados con trámites sucesorales, los cuales, según adujo, ascendían a $1,416.

Atendida esta solicitud, ese mismo día, a saber, el 22 de mayo de 2025, el TPI emitió una *Resolución y Orden* que se notificó el 23 de mayo de 2025.[13] En lo pertinente, expresó que, en la vista inicial celebrada el 20 de junio de 2024, emitió una *Minuta-Resolución* en la que estableció que el descubrimiento de prueba concluiría el 30 de octubre de 2024, advirtiendo que todo aquel que no se realizara en dicha fecha se entendería renunciado y no sería permitido. A base de lo anterior, declaró No Ha Lugar la solicitud de enmienda a la demanda. Además, ordenó a las partes presentar el Informe de Conferencia con Antelación a Juicio en o antes del 15 de febrero de 2025. Al advertir que dicha orden no había sido cumplida, concedió

---

[12] *Véase*, Entrada Núm. 82, SUMAC TPI.
[13] *Véase*, Entrada Núm. 83, SUMAC TPI.

un término adicional de treinta (30) días para su presentación y apercibió a los abogados que el incumplimiento conllevaría la imposición de severas sanciones económicas. Cabe precisar que, este dictamen no fue objeto de reconsideración ni revisión apelativa.

Así las cosas, el 12 de junio de 2025, las partes presentaron un *Informe sobre Conferencia con Antelación al Juicio.*[14] En lo pertinente, la peticionaria informó que los bienes sujetos a partición consistían en una propiedad residencial ubicada en la urbanización Jardines de Country Club en Carolina y la suma de $4,500.00 depositada en una cuenta del Banco Popular de Puerto Rico. Además, indicó que la propiedad estaba gravada con una hipoteca cuyo balance aproximado ascendía a $64,516.60 para diciembre de 2024.

En atención a lo anterior, alegó que había asumido el pago de la hipoteca desde septiembre de 2020, por lo que reclamaba un crédito a su favor de al menos $21,786.00. También reclamó créditos por gastos de mantenimiento y conservación de la propiedad, incluyendo corte de patio, trabajos de electricidad y plomería, por una suma de al menos $1,770.00, así como por gastos legales relacionados con la sucesión, los cuales ascendían a $1,616.00.

Como prueba documental, anunció, entre otros documentos, una tasación de la propiedad preparada por un tasador licenciado, evidencia del balance e historial de pagos de la hipoteca, comprobantes de pagos hipotecarios y de mantenimiento de la propiedad, fotografías de reparaciones realizadas, facturas por trabajos de electricidad y plomería, la factura correspondiente a la tasación y evidencia de los gastos legales reclamados como créditos.

---

[14] *Véase*, Entrada Núm. 84, SUMAC TPI.

Cabe precisar que, el 26 de noviembre de 2025, las partes presentaron otro Informe con Antelación al Juicio actualizado mediante el cual, la peticionaria solicitó actualizar los balances de los créditos antes de que se celebrara la vista en su fondo.

Finalmente, el 15 de enero de 2026, se celebró otra Conferencia con Antelación al Juicio. En esta ocasión, de la *Minuta Resolución* de esta vista surge que se discutió el Informe con Antelación al Juicio que presentaron las partes.[15] Luego, las partes informaron que la única controversia pendiente era la relacionada con los créditos reclamados en el caso. Sobre este particular, una de las representaciones legales señaló que dichos créditos no fueron incluidos en las demandas enmendadas, mientras que la otra sostuvo que no existían determinaciones previas sobre ellos y remitió al cuaderno particional anejo a la demanda original.

Ante ello, el Tribunal le concedió a la parte recurrida hasta el 5 de febrero de 2026 para expresarse con relación al porque se debía excluir la reclamación de la peticionaria en torno a los créditos alegados respecto al pago de la hipoteca que gravaba la propiedad objeto de este litigio, pagos por concepto de mantenimiento de la propiedad y de los gastos legales. Asimismo, el Tribunal aprobó el Informe en Conjunto de Conferencia con Antelación al Juicio como el acta que regiría el procedimiento del juicio en su fondo. Además, dispuso que no se permitirán reservas ni enmiendas de testigos, documentos, prueba o alegaciones, y advirtió que cualquier defensa afirmativa no incluida en dicho informe se entendería renunciada. Finalmente, señaló el juicio en su fondo para los días 27 y 28 de octubre de 2026 y ordenó a las partes presentar la prueba documental conforme fue discutida y marcada en la Minuta-Resolución.

---

[15] *Véase*, Entrada Núm. 116, SUMAC TPI.

En cumplimiento con esta *Orden,* el 25 de enero de 2026, la señora Peggie y la señora Johanna presentaron una *Moción para Excluir Prueba sobre Créditos No Alegados* [...].[16] Alegaron que la reclamación de créditos por pagos de hipoteca, mantenimiento y gastos legales no formaban parte de las alegaciones vigentes en el pleito, ya que la demanda original y sus enmiendas anteriores nunca incluyeron dichas reclamaciones. Sostuvieron que, aunque la peticionaria intentó enmendar nuevamente la *Demanda* el 22 de mayo de 2025 para incorporar tales créditos, el Tribunal denegó dicha solicitud mediante *Orden* notificada el 23 de mayo de 2025, por lo que dicha determinación constituía la ley del caso.

A base de ello, argumentaron que la peticionaria no podía intentar introducir indirectamente en el juicio prueba documental o testifical relacionada con alegados pagos de hipoteca, mantenimiento o gastos legales, pues ello ampliaría indebidamente las controversias del pleito en contravención a las Reglas 6 y 13 de Procedimiento Civil, el debido proceso de ley y las órdenes previas del Tribunal. Asimismo, indicaron que permitir dicha prueba ocasionaría un perjuicio procesal a las codemandadas, particularmente porque el descubrimiento de prueba había concluido y las reclamaciones económicas nunca fueron objeto de alegaciones ni descubrimiento previo. En virtud de lo antes expuesto, solicitaron que se excluyera toda prueba relacionada con dichos créditos y que el juicio se limitara estrictamente a la liquidación de la comunidad hereditaria conforme a las alegaciones vigentes.

En respuesta, el 19 de febrero de 2026, la peticionaria presentó una *Moción Solicitando la presente se Acoja en Apoyo a Mocion sobre Oposición* [...].[17] En esta, reiteró su reclamación de

---

[16] *Véase,* Entrada Núm.109, SUMAC TPI.
[17] *Véase,* Entrada Núm. 127, SUMAC TPI.

créditos a su favor por pagos relacionados con la propiedad objeto de la comunidad hereditaria. En específico, alegó que desde el fallecimiento del causante en junio de 2020 asumió exclusivamente el pago de la hipoteca que grava el inmueble, así como los gastos de conservación y mantenimiento de la propiedad y ciertos gastos legales relacionados con la declaratoria de herederos, planilla de caudal relicto e inscripción de derechos hereditarios. A esos efectos, sostuvo que dichas partidas ascendían, entre otros, a $30,704.19 por concepto de pagos hipotecarios, además de gastos de mantenimiento y honorarios legales, por lo que solicitó al Tribunal el reconocimiento y aprobación de dichos créditos a su favor al momento de liquidar la comunidad hereditaria.

Evaluados los planteamientos de las partes, el 19 de marzo de 2026, el TPI dictó una *Resolución* que se notificó el 20 de marzo de 2026.[18] En esta, determinó que, aunque el 22 de mayo de 2025 la peticionaria solicitó enmendar la demanda para incluir reclamaciones de créditos por pagos de hipoteca, mantenimiento de la propiedad y gastos legales relacionados con la liquidación de la comunidad hereditaria, dicha solicitud fue declarada No Ha Lugar mediante *Resolución y Orden* notificada el 23 de mayo de 2025, la cual advino final y firme.

Sostuvo que, posteriormente, la peticionaria intentó nuevamente incluir dichas reclamaciones en el Informe sobre Conferencia con Antelación a Juicio presentado el 26 de noviembre de 2025. No obstante, expresó que la parte recurrida se opuso, argumentando que el asunto ya había sido adjudicado y constituía la ley del caso. Así pues, declaró con lugar la moción para excluir prueba sobre créditos no alegados, al concluir que la determinación previa denegando la enmienda a la demanda constituía la ley del

---

[18] *Véase*, Entrada Núm. 131, SUMAC TPI.

caso y, por ende, procedía excluir toda prueba relacionada con dichas reclamaciones.

Inconforme con este dictamen, el 23 de marzo de 2026, la señora Prado Aponte presentó una *Moción Urgente de Reconsideración.*[19] Así las cosas, el 20 de abril de 2026, el TPI emitió una *Resolución Interlocutoria* que se notificó el 22 de abril de 2026, denegando la solicitud de reconsideración.[20] Aún inconforme, el 12 de mayo de 2026, la peticionaria presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **El Tribunal de Primera Instancia cometió error de derecho y abusó de su discreción al ignorar y hacer abstracción de los principios del derecho sucesorio como consecuencia de haber excluido de las operaciones particionales de la comunidad hereditaria los gastos de conservación y mantenimiento del inmueble, que fueron satisfechos por la peticionaria de su propio patrimonio para evitar la ejecución de la hipoteca que grava la propiedad al igual que evitar el deterioro de la misma, así como los gastos incidentales relacionados a la partición. Esta errónea decisión se basó en que tales gastos no se incluyeron en la demanda y la enmienda a la misma se solicitó luego de que hubiera concluido el descubrimiento de prueba y al no haberse solicitado la revisión de la decisión denegando la enmienda a la demanda, tal decisión constituía la ley del caso que no podía ser variada.**

Atendido el recurso, el 13 de mayo de 2026, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 22 de mayo de 2026 para presentar su postura en cuanto al recurso. Oportunamente, la señora Nancy presentó su *Oposición al Auto de Certiorari.* Por su parte, la señora Peggie y la señora Johanna presentaron su *Oposición a Certiorari.* En esencia, en ambos escritos, se negó que el TPI cometiera el error que la señora Prado Aponte le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

---

[19] *Véase*, Entrada Núm. 134, SUMAC TPI.
[20] *Véase*, Entrada Núm. 137, SUMAC TPI.

## II.

### -A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público;

y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 63, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

La Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, establece el trámite procesal para enmendar las alegaciones. A esos efectos, la regla dispone lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva. Si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. **En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; el permiso se concederá liberalmente cuando la justicia así lo requiera.** La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal lo ordene de otro modo. (Énfasis suplido)

**Así, esta Regla establece una directriz respecto a la concesión liberal de este remedio, disponiendo que se procede autorizarlo "cuando la justicia así lo requiera".** (Énfasis suplido) *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 747 (2005). **Además, faculta al tribunal con discreción para determinar la procedencia de la enmienda a las alegaciones y, como norma general, favorece que se conceda.** (Énfasis suplido) Íd.

En vista de lo anterior, la autorización para enmendar las alegaciones, a tenor con esta Regla, debe concederse liberalmente. Regla 13.1 de Procedimiento Civil, *supra*; *S.L.G. Font Bardón v. Mini-Warehouse,* 179 DPR 322, 334 (2010). No obstante, a pesar de que las Reglas de Procedimiento Civil favorecen un enfoque liberal a la autorización de enmiendas a las alegaciones, esta liberalidad no es infinita. Íd. Para guiar a los tribunales en la evaluación de solicitudes para enmendar las alegaciones, el Tribunal Supremo ha diseñado los siguientes criterios: (1) el impacto del

tiempo transcurrido previo a la enmienda; (2) la razón de la demora; (3) el perjuicio a la otra parte y (4) la procedencia de la enmienda solicitada. *León Torres v. Rivera Lebrón,* 204 DPR 20, 35-36 (2020).

**-C-**

La doctrina de la ley del caso está predicada en el principio de que las adjudicaciones que hacen los tribunales deben tener finalidad. *Srio. del Trabajo v. Tribunal Superior,* 95 DPR 136, 141 (1967). En vista de ello, el Tribunal Supremo ha establecido que "sólo los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, pueden constituir la ley del caso". *Félix v. Las Haciendas,* 165 DPR 832, 843 (2005). Dicho de otro modo, aquellos derechos y obligaciones que han sido adjudicados están impedidos de reexaminarse debido a que gozan de finalidad y firmeza. *Cacho Pérez v. Hatton Gotay,* 195 DPR 1, 9 (2016). Dichas determinaciones, como regla general, obligan, tanto al TPI como al que las dictó, si el caso vuelve ante su consideración. *Pueblo v. Serrano Chang,* 201 DPR 643, 653 (2018). Es por lo antes expuesto, que la doctrina de la ley del caso "solo puede invocarse cuando exista una decisión final de la controversia en sus méritos". Íd.

Ahora bien, cabe mencionar que la doctrina de la ley del caso no es un mandato inflexible o invariable, sino que recoge la costumbre deseable de respetar como finales aquellas controversias sometidas, litigadas y decididas por un tribunal. *Mgmt. Adm. Servs, Corp. v. ELA,* 152 DPR 599, 607 (2000). En consecuencia, únicamente procede reexaminar un asunto ya adjudicado, en situaciones excepcionales como, por ejemplo, cuando la determinación previa sea errónea o pueda causar una grave injusticia. *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc.,* 204 DPR 183, 201 (2020). En atención a lo anterior, nuestro Tribunal Supremo ha expresado que "solo cuando se presenta un atentado contra los principios básicos de la justicia, es que los

tribunales pueden descartar la aplicabilidad de la doctrina de la ley del caso". *Cacho Pérez v. Hatton Gotay*, supra, pág. 10. Asimismo, ha reiterado que esta doctrina está "al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados manifiestamente injustos". *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc.*, supra, pág. 201-202. Por tanto, si el caso vuelve ante la consideración del tribunal y este entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, dicho foro puede aplicar una norma de derecho distinta. *Cacho Pérez v. Hatton Gotay*, supra, pág.9.

III.

En su único señalamiento de error, la peticionaria sostuvo que el TPI erró y abusó de su discreción al excluir de las operaciones particionales de la comunidad hereditaria la consideración de los créditos reclamados por esta, consistentes en los pagos de hipoteca, gastos de conservación y mantenimiento del inmueble, así como gastos incidentales relacionados con la partición del caudal hereditario. Argumentó que dichos desembolsos fueron sufragados de su patrimonio propio con el propósito de evitar la ejecución hipotecaria del bien hereditario y su deterioro, así como para preservar el inmueble objeto de la partición. Añadió que la determinación recurrida se fundamentó en la ausencia de tales alegaciones en la demanda y en la denegatoria de la solicitud de enmienda, la cual fue tratada como ley del caso. Examinado el expediente a la luz del derecho aplicable, concluimos que le asiste la razón a la peticionaria.

La Regla 13.1 de Procedimiento Civil, *supra*, establece que las enmiendas a las alegaciones deben permitirse liberalmente cuando la justicia así lo requiera. *S.L.G. Sierra v. Rodríguez*, supra, pág. 747. Nuestro Tribunal Supremo ha reiterado que el propósito de dicha

norma es promover la adjudicación de los casos en sus méritos, y que el tribunal posee amplia discreción para permitir enmiendas a las alegaciones, debiendo, como norma general, favorecer su concesión. Íd.

En el presente caso, del expediente surge que la cuestión de los créditos no ha sido un planteamiento aislado ni sorpresivo. Por el contrario, la peticionaria ha reiterado consistentemente su reclamación de créditos a lo largo de varias etapas del proceso. En su *Moción en Cumplimiento de Orden e Informativa* del 15 de mayo de 2024, ya había informado que asumía el pago de la hipoteca y los gastos de mantenimiento del inmueble, reclamando dichas partidas como créditos. Posteriormente, durante la conferencia inicial celebrada el 20 de junio de 2024, volvió a plantearse que la peticionaria había realizado pagos de la hipoteca del inmueble, los cuales daban lugar a créditos a su favor. Asimismo, en el *Informe con Antelación a Juicio* presentado el 12 de junio de 2025, la peticionaria reiteró expresamente dichas reclamaciones, detallando los pagos hipotecarios, los gastos de mantenimiento y los gastos legales incurridos en beneficio del caudal hereditario.

De igual forma, del propio expediente surge que la parte recurrida, específicamente la señora Peggie, en su alegación responsiva, reconoció la posibilidad de la existencia de créditos a favor de la peticionaria o, en la alternativa, que estos habían sido satisfechos, lo cual evidencia que la controversia relativa a dichos créditos fue, al menos, advertida dentro del pleito desde etapas tempranas del procedimiento. A pesar de ello, la solicitud formal de enmienda a la demanda para incluir expresamente dichas reclamaciones fue denegada por el TPI mediante *Resolución y Orden* notificada el 23 de mayo de 2025. Si bien dicha determinación no fue objeto de reconsideración ni revisión apelativa, por lo que advino final en el curso procesal del caso, ello no impide que este foro

apelativo examine su corrección a la luz de las excepciones a la doctrina de la ley del caso.

En efecto, la doctrina de la ley del caso persigue la finalidad de dotar de estabilidad y firmeza a las determinaciones judiciales, mas no constituye un mandato inflexible. *Mgmt. Adm. Servs, Corp. v. ELA*, supra, pág. 607. Nuestro ordenamiento reconoce que esta cede ante circunstancias excepcionales, particularmente cuando su aplicación pudiera producir un resultado manifiestamente injusto o cuando la determinación previa resulte errónea. *Berkan v. Mead Johnson Nutrition Puerto Rico, Inc.*, supra, pág. 201; *Cacho Pérez v. Hatton Gotay*, supra, pág. 10. En tales supuestos, el tribunal puede apartarse de sus determinaciones previas en aras de la justicia sustancial.

Aplicada dicha normativa al presente caso, concluimos que la denegatoria de la enmienda a la demanda no debía operar como un impedimento absoluto para la consideración de los créditos reclamados. Ello, particularmente, cuando del propio tracto procesal surge que la controversia sobre dichos créditos estuvo presente desde etapas tempranas del litigio, fue reiteradamente planteada por la peticionaria, discutida en conferencias ante el tribunal, incluida en informes posteriores y reconocida, al menos en su existencia potencial, por una de las recurridas en su alegación responsiva.

En estas circunstancias, la rigidez de la aplicación de la doctrina de la ley del caso, para excluir en su totalidad la posibilidad de enmienda o de consideración de la controversia, no se ajusta a los fines de la Regla 13.1 de Procedimiento Civil, *supra,* ni al principio rector de que las enmiendas deben permitirse liberalmente cuando la justicia así lo requiera. Más aún, el propio expediente refleja que la controversia sobre créditos no constituía un asunto ajeno al pleito ni sorpresivo para las partes.

Por lo tanto, procede revocar la determinación del TPI y permitir la enmienda a la demanda solicitada, a los fines de incluir las reclamaciones de créditos relacionadas con los pagos de hipoteca, gastos de mantenimiento y gastos legales. Ello no implica, en esta etapa, una determinación sobre la procedencia en los méritos de dichos créditos, sino únicamente que la peticionaria tendrá la oportunidad de alegarlos formalmente y que las partes podrán litigar su procedencia conforme a derecho y al debido proceso de ley. En consecuencia, se devuelve el caso al TPI para la continuación de los procedimientos conforme a lo aquí dispuesto.

IV.

Por los fundamentos antes expuestos, expedimos la *Petición de Certiorari* y **revocamos** el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones